TRACY R. BANGS *vs.* JOHN O. FADDEN, *et al.*

· Opinion filed May 18th, 1895.

**Assignment for Creditors—Reservation of Exemptions.**

> The reservation, in general terms, of exempt property by an assignor in an assignment for the benefit of creditors, does not render the assignment void, although the assignment does not specify such exempt property.

**Construction of Deed of Assignment.**

> Such an assignment construed, and *held* not to require creditors to execute releases as a condition for securing benefits thereunder. See opinion for the peculiar features of the assignment which were claimed to render it void as requiring such releases.

Appeal from District Court, Grand Forks County; *Templeton*, J.

Action by Tracy R. Bangs, assignee, against John Fadden and others. Defendants had judgment and plaintiff appeals.

Reversed.

*Bangs & Fisk*, for appellant.

*Burke Corbet*, for respondents.

CORLISS, J. The sole question before us relates to the validity of a general assignment for the benefit of creditors executed by William Brown to the plaintiff. Creditors of the assignor having attached the property embraced in the assignment, the plaintiff sued them and the sheriff who levied the attachments in conversion. On the trial the assignment was excluded from evidence on the ground that it was void on its face. The court directed a verdict in favor of defendants, and from the judgment entered on that verdict plaintiff appeals.

The validity of the assignment is assailed on two grounds. It is first insisted that the assignment is void for the reason that by the reservation of exempt property contained therein the particular property which was to pass thereunder was at the time of the execution and delivery of the assignment rendered uncertain, and hence that no property can be said to have been conveyed by the instrument. This proposition is not destitute of logical force.

Our statute plainly contemplates that it shall be lawful for the assignor to reserve his exempt property. Section 4663, Subd. 3, Comp. Laws, declares that an assignment is void if it reserves any interest in the assigned property, or in any part thereof, to the assignor, or to his benefit, before all his existing debts are paid, "other than property exempt by law from execution." And section 4667, Comp. Laws, provides that the assignor shall within 20 days after making an assignment make and file an inventory, in which, among other things, he must list first the exempt property, and then all other property, in separate schedules. This legislation makes it apparent that the law intended that the assignor should be entitled to his exempt property as in other cases (as, indeed, we held in *Bank* v. *Freeman*, 1 N. D. 198, 46 N. W. 36,) and that the assignment would be valid, although reserving the exempt property in general terms only. The assignment law does not contemplate that the assignment shall specify the property claimed as exempt. On the contrary, it in terms declares that such specification shall be made in the inventory to be subsequently filed. It, indeed, would be strange if the assignor could not obey the statute without thereby destroying the assignment. It would be utterly impracticable to require him to specify in the assignment the exempt property, for the law allows him only property of the value of $1,500, aside from the specific articles which are exempt, and does not permit him to fix that value himself so as to bind his creditors. Should the exempt property be specified in the instrument itself, and excepted from its provisions, then, in case it should exceed $1,500 in value, the assignment would not embrace all of the assignor's property subject to execution, and hence would not be a general assignment for the benefit of creditors. But the statute relates to only general assignments,—*i. e.* those embracing all the assignor's property not exempt by law from execution—and not to partial assignments. It is absurd to suppose that the legislature intended to require the assignor to designate in the assignment itself the property which he claims as exempt, when

the effect of such a designation would in many a case be to render the assignment a transfer of only a portion of his property not exempt, and thus defeat the object of the law, which relates exclusively to general assignments. In the majority of the cases it would be found to be the case that the assignor had claimed in the assignment more than $1,500 of property in value, when the value of the specified property came to be fixed in such a way as would bind his creditors as to its value. In no case would his valuation be found to agree with the valuation as ultimately established. One of two things would invariably be true,—the assignment would embrace only a portion of the assignor's property not exempt because of undervaluation by the assignor, or he would lose a portion of the exemption given him by the law by reason of an overvaluation of the specified property. If the statute were silent, such a construction should not be placed on it as to require the exempt property to be specified in the assignment. But the statute is not silent. It declares that the particular property claimed as exempt shall be set forth, not in the assignment itself, but in the inventory to be subsequently filed. And yet it is asserted that an assignment whose terms are in harmony with the letter and the obvious policy of the law is void. We hold that a general assignment which, in general terms, excepts exempt property; is a valid general assignment for the benefit of creditors. Whether the particular property which is finally set apart as exempt passes to the assignee on the delivery of the assignment, and the assignment as to such property is subsequently defeated when it is finally determined what particular property the assignor can claim as exempt, or whether such property never passes to the assignee at all, it is unnecessary now to decide. The creditors of the assignor have no interest in that question, for they have no right to interfere with the exempt property, and the title to all the other property unquestionably vests in the assignor at the time of the assignment.

We now come to the second question in the case. It is urged that the assignment is void for the reason that it requires all

creditors who desire to receive any benefit from the trust to release their claims as a condition of receiving any dividend. If the instrument must he necessarily so construed, then its invalidity cannot be doubted. Both under a settled rule of law and under the express provisions of our Code such an assignment is void. Comp. Laws, § 4663. On this point there is no difference of opinion between the counsel in the case. Their views diverge on the point of construction. Counsel for plaintiff insist that the instrument, when taken as a whole, does not in fact require any creditor to release his claim as a condition of being entitled to a dividend out of the assigned estate. We are all very clearly of opinion that this is the true construction of the instrument. A reference to its language now becomes necessary. It recites that the assignor is desirous of conveying all his property for the benefit of his creditors without any preference or priority, and then it conveys such property as is not exempt, in trust for the following purposes: "To pay and discharge in full, if the residue of said proceeds be sufficient for that purpose, all the debts and liabilities now due and to become due from said party of the first part to all his creditors who shall file releases of their claims and debts against said party of the first part, as provided by law, together with all interest due and to become due thereon; and, if the residue of said proceeds shall not be sufficient to pay said debts and liabilities and interest in full, then to apply the same as far as they will extend to the payment of such debts and liabilities and interest, proportionately to their respective amounts, and in accordance with the statute in such case made and provided." A general survey of the instrument makes it plain that the assignor intended to avail himself of the provisions of the general assignment law of this state. He recites that he desires to assign his property for the benefit of all his creditors without preference or priority, thus bringing the instrument in harmony with section 4660, Comp. Laws, which prohibits preferences. He then declares that he desires his debts and liabilities to be paid out of the assigned estate "in accordance with the

statute in such case made and provided." Having clearly evinced a purpose to proceed under the assignment law, it seems to us a strange construction to interpret the same instrument as expressing a purpose to fly directly in the face of one of its explicit provisions, thus rendering the instrument void, and defeating the very purpose which elsewhere in the assignment plainly appears. Section 4663, Comp. Laws, in express terms declares an assignment to be void which tends to coerce a creditor to release or compromise his claim. Subdivision 1. So far from expressing such a purpose so subversive of his main object, the assignor attaches to the clause relating to releases a condition,—the creditor is to file releases "as provided by law." It is no violent stretch of the meaning of these words, in view of the duty of courts to so construe instruments as to sustain them, and in view of the assignor's obvious purpose to proceed under our assignment law, to hold that this language means that creditors are to file releases, provided there is any law requiring them to do so as a condition of receiving dividends. The learned trial judge must have eliminated these words "as provided by law" from the assignment in interpreting it, for on his interpretation of it they are meaningless, and are, therefore, to be expunged from the instrument. This is certainly a novel rule of construction,—one for which we have been unable to find any authority. The elementary rules of interpretation as they are embodied in our Code control this case. "Particular clauses of a contract are all subordinate to its general intent." Comp. Laws, § 3565. "Repugnancy in a contract must be reconciled if possible by such interpretation as will give some effect to the repugnant clauses subordinate to the general intent and purposes of the whole contract." *Id.* § 3567. "A contract must receive such interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect if it can be done without violating the intention of the parties." *Id.* § 3558. The learned trial judge appears to have removed the qualification attached by the assignor himself to the provision relating to the filing of releases,

thus giving to that provision a meaning not expressed therein, and destructive of the undoubted purpose of the assignor. It seems to us that it is more proper to respect the condition which the assignor has affixed to this provision, and so construe such condition as to support his purpose, and sustain the assignment, instead of defeating it. In the very portion of the assignment in which he directs distribution among his creditors he in terms invokes the statutes of this state which prohibit a condition requiring releases, declaring that it is his purpose that such distribution shall be made "in accordance with the statute in such case made and provided." And yet the conclusion is drawn from this conditional provision relating to releases that the assignor did not intend that the trust should be administered in accordance with the statute, but in flat defiance of it. The cases of *Henderson* v. *Pierce*, (Ind. Sup.) 9 N. E. 449; *Redpath* v. *Tutewiler*, *Id.* 911; and *Grubbs* v. *King*, (Ind. Sup.) 20 N. E. 142,—while not directly in point, strongly support our views in this case.

The judgment of the District Court is reversed, and a new trial ordered. All concur.

### ON REHEARING.

In denying the petition for rehearing we deem it necessary to refer to and answer a contention on the part of the defendants not noticed in the original opinion. It is urged that a rule applies to assignments for the benefit of creditors different from that which governs ordinary contracts, and that, where there is any uncertainty as to the true construction of the instrument, arising upon the face thereof, the instrument is void. No authority is cited which supports this novel exception to the otherwise universal rule that an ambiguous instrument is regarded as meaning what the courts construe to be its true interpretation, and is overthrown or sustained accordingly as such interpretation does or does not bring it within the condemnation of some rule of law. Whatever authority there is on the subject is the other way. *Coyne* v. *Weaver*, 84 N. Y. 386. The reasons urged for this

distinction do not appear to us to possess any force.   Not only would this distinction be a departure from all former rulings, and be without support in reason, but it would leave the creditors in the same state of uncertainty as to the validity of the assignment as it is insisted they are in when the instrument is ambiguous on its face.   There would arise in every case the question whether the instrument was sufficiently obscure with respect to its true interpretation to bring it within this rule.   To escape one kind of uncertainty the creditors would be offered another equally troublesome.   We would have that very point to meet in this case.   It might with much force be urged that the assignment in question is not so ambiguous as to warrant the application of this doctrine for which counsel for defendants contend.   The Minnesota decisions cited by him do not sustain his position. Two of them have no bearing whatever on this case,—*In re Bird*, 40 N. W. 827; *May* v. *Walker*, 35 Minn. 194, 28 N. W. 252.   In the other one—*McConnell* v. *Rakness*, 42 N. W. 539—the uncertainty as to the purpose of the assignor was created by an uncertainty as to a fact outside of the assignment.   The assignment was in fact a common law assignment, it not reciting the facts necessary to make it an assignment under the insolvency act, and it appearing that such facts did not exist.   The clause of the assignment which the court held destroyed its validity provided for the payment of all creditors of the assignor who should file releases of their claims, or who should otherwise be or become entitled to payment of their claims out of the property assigned according to law and the statute in such case made and provided. The ground of the decision was that the assignment itself did not inform creditors as to the terms and conditions on which they would be entitled to share in its benefits; that they might be led to believe from its provisions that because of an extraneous fact —*i. e.* the seizure of the assignor's property by a creditor—the assignor had made an assignment requiring releases, which would, if this fact existed, be a valid assignment under the insolvency law.   Whether the assignor intended to require releases could

not be determined by a construction of the instrument based upon its language alone, but depended also upon the existence or non-existence of a fact outside of the assignment. The court in that case did not hold that the instrument was ambiguous on its face alone, and that, therefore, it was void, but held that, inasmuch as the assignor might lawfully require releases in certain cases, there was an uncertainty as to his purpose, growing not out of the language of the assignment alone, but out of that in connection with the fact that he could, in specified cases, require releases to be given; that the assignment would not on its face inform creditors whether releases were necessary, but that only by ascertaining an extrinsic fact—the fact whether the assignor's property had been seized by his creditors—could they find out whether the assignor intended to exact releases as a condition of their participating in the benefits of the assignment. We regard that case as an authority against the defendants, for the court impliedly holds that when the instrument itself, when properly construed without reference to extrinsic facts, informs the creditors as to the terms and conditions on which they will be entitled to share in the benefits of the assignment, it is valid. The language of the court in that case is "that creditors have a right to be informed by the assignment itself what its conditions are, and on what terms they are entitled to share in its benefits, and not have their rights left in a state of uncertainty, and dependent upon the existence or nonexistence of certain extraneous facts."

The application for a rehearing is denied.