661 P.2d 1148

Wilbur EVANS, Plaintiff-Appellee,

v.

James F.E. YOUNG, and Virginia L. Young, husband and wife; Virgil F. Young, and Stella M. Young, husband and wife; and Elmer Geis, a widower, Defendants-Appellants.

Wilbur EVANS, Plaintiff-Appellant,

v.

James F.E. YOUNG, and Virginia L. Young, husband and wife; Virgil F. Young, and Stella M. Young, husband and wife; and Elmer Geis, a widower, Defendants-Appellees.

Nos. 1 CA–CIV 5672, 1 CA–CIV 5750.

Court of Appeals of Arizona, Division 1, Department D.

Jan. 20, 1983.

Rehearing Denied March 4, 1983.

Review Denied April 5, 1983.

Murphy & Posner by Richard H. Lee and K. Bellamy Brown, Phoenix, for plaintiff/appellee-appellant.

Thayer C. Lindauer, P.C. by Thayer C. Lindauer, Phoenix, for defendants/appellants-appellees.

## OPINION

HAIRE, Presiding Judge.

The issue in this appeal is whether a judgment lienholder may foreclose against homestead property without following the appraisal procedure enumerated in A.R.S. § 33–1105.

In 1979, Wilbur Evans filed a complaint alleging that he held by assignment several recorded judgments against James and Virginia Young. Evans requested that the tri-

al court determine the validity of his claimed liens upon the Youngs' property, determine the amounts and priority of all liens and claims against that property, and issue a writ of execution directing the sale of the property and subsequent distribution of proceeds. In January 1975, the Youngs had filed a Declaration of Homestead on the property involved which stated that the value, over and above encumbrances, did not exceed $15,000. In July 1979, Mr. Young filed an affidavit in response to Evans' motion for summary judgment which indicated that the equity in the property did not exceed $5,000.

In granting summary judgment for Evans, the trial court found that Evans held several judgments obtained against the Youngs and that each judgment was duly recorded and constituted a valid lien upon the Youngs' property. The court then ordered that special execution issue to the sheriff directing seizure and sale of the property for at least $20,000. The court also directed that proceeds of the sale be disbursed first to the Youngs in the amount of $20,000, then to pay costs and expenses of sale, then to Evans in satisfaction of his liens, and finally to other claimants.

On appeal, the Youngs challenge the propriety of the trial court's order. They contend that their homestead property is protected from general foreclosure by judgment lienholders. The Youngs argue that homestead property is subject to execution and forced sale only after a creditor invokes the appraisal procedure described in A.R.S. § 33–1105. In response, Evans argues that it is only the value of the homestead interest, in the amount of $20,000,[1] that is protected. Thus, Evans maintains, a foreclosure sale is proper so long as the amount of the homestead interest is preserved for the debtor. He contends that because the Youngs' property is worth more than $20,000, there is value to which the judgment liens attach. In a separate appeal, Evans also contends that the trial court erred in failing to award reasonable attorney's fees.

■ Evans claims the right to foreclose his judgment lien against homestead property pursuant to A.R.S. § 12–1635(B), a general execution statute. The Youngs claim protection against foreclosure pursuant to the specific statutes relating to homesteads and homestead exemptions. See A.R.S. §§ 33–1101 to 1107. Determining the conflicting rights of these parties first involves reconciling a general statute and a specific statute. The court should harmonize the two statutes if possible. E.g., Arden-Mayfair, Inc. v. State, Department of Liquor Licenses & Control, 123 Ariz. 340, 342, 599 P.2d 793, 795 (1979); Shirley v. Superior Court, 109 Ariz. 510, 513, 513 P.2d 939, 942 (1973), cert. denied, Minyard v. Shirley, 415 U.S. 917, 94 S.Ct. 1415, 39 L.Ed.2d 472 (1974). When the provisions of a general statute conflict with those of a special statute, however, the special statute prevails. E.g., Arden-Mayfair, supra; Peabody Coal Co. v. Navajo County, 117 Ariz. 335, 339, 572 P.2d 797, 801 (1977). With these principles in mind, we proceed to evaluate the conflicting claims asserted by Evans and the Youngs.

■ A.R.S. § 12–1635(B) provides a supplemental remedy for judgment creditors by authorizing a separate action to foreclose a judgment lien when a general writ of execution has been issued and returned unsatisfied.[2] See Walker v. Davies,

---

1. See A.R.S. § 33–1101 (Supp.1978) (amended by Laws 1982, Ch. 123, § 1, effective April 14, 1982). The statute now reads in pertinent part as follows:

    "A. Any person the age of eighteen or over, married or single, who resides within the state may hold as a homestead exempt from attachment, execution and forced sale, not exceeding fifty thousand dollars in value, any one of the following:

    "1. Real property in one compact body upon which exists a dwelling house in which the claimant resides.

    "2. Land in a compact body which the claimant designates."

2. A.R.S. § 12–1635(B) reads in pertinent part as follows:

    "B. The execution creditors may also proceed against defendant therein and other parties, by original complaint, to obtain satisfac-

113 Ariz. 233, 550 P.2d 230 (1976). The homestead statutes do not eliminate this supplemental remedy. Rather, the statutes can be read together so that foreclosure is in fact available to judgment creditors who wish to subject homestead property to execution and forced sale provided the procedures set forth in § 33–1105 are satisfied. A judgment lienholder, as the plaintiff in execution, may initiate this procedure by serving written notice upon the defendant debtor indicating dissatisfaction with the value of homestead property and the appointment of an appraiser to appraise the homestead in his behalf. See A.R.S. § 33–1105(A). Contrary to Evans' assertion, the defendant must appoint an appraiser who meets with plaintiff's appraiser to view the homestead property and determine its value. See A.R.S. § 33–1105(B). If the defendant does not appoint an appraiser, the court appoints a suitable party. See A.R.S. § 33–1106(C). Additionally, the statute accounts for all possible results of this joint appraisal:

(1) If the appraisers determine that the value of the homestead property does not exceed the value of the homestead exemption ($20,000 at the time of this action) over and above all liens and encumbrances, then the property claimed as a homestead is not subject to execution and forced sale. See A.R.S. § 33–1105(C).

(2) If the appraisers determine that the value of the homestead property exceeds the value of the homestead exemption over and above all liens and encumbrances and that the property can be divided, then part of the property, worth the value of the homestead exemption over and above liens and encumbrances, is set aside for defendant, and the remainder is sold under execution. See A.R.S. § 33–1105(D).

(3) If the appraisers determine that the value of the homestead property exceeds the value of the homestead exemption over and above all liens and encumbrances and that the property cannot be divided, then all of the property is sold and the proceeds distributed first, to the defendant in the

tion of their executions after they have been

amount of the homestead exemption, and second, to satisfy the execution. See A.R.S. § 33–1105(E). All bids received must exceed the value of the homestead exemption.

■ This appraisal procedure achieves the same result as the foreclosure claimed by Evans under A.R.S. § 12–1635(B) by satisfying the judgment lien when the value of the homestead property exceeds the value of the homestead exemption over and above all liens.

Our supreme court discussed the question of whether a judgment lien attaches to the excess value over the amount of the homestead exemption in *Union Oil Co. v. Norton-Morgan Commercial Co.,* 23 Ariz. 236, 202 P. 1077 (1922). In that case, the holder of two judgment liens purchased homestead property at an execution sale. Plaintiff Union Oil, successor-in-interest to the party who filed the homestead declaration, filed suit to quiet title to the property, and the trial court found the judgment liens had validly attached to the homestead property.

In reversing the trial court, the supreme court discussed the relationship between the statute providing for judgment liens (paragraph 3633, Civil Code, 1913, predecessor to A.R.S. § 33–964) and the homestead statutes. The court noted that the homestead statutes are intended to preserve an amount of money equal to the value of the homestead exemption. It then discussed whether the filing of a homestead declaration protects any excess value over the amount of the homestead exemption from judgment liens. The court indicated that the method for determining whether the value of the homestead property exceeds the amount of the exemption is the statutory appraisal procedure (paragraph 3295, Civil Code, 1913, predecessor to A.R.S. § 33–1105).

"This method of determining whether there is an excess value in the land claimed as homestead would apply and have to be pursued whether the lien of an attachment or judgment attached to the excess or not. *It is the only method*

returned unsatisfied in whole or in part."

*provided by law to reach any excess. It is a proceeding that must take place between the judgment creditor and the judgment debtor while the latter is occupying the land claimed as his homestead.*" 23 Ariz. at 244, 202 P. at 1080 (emphasis added).

The court noted that the statute did not provide a method for determining whether there is excess value in the homestead property under the precise facts of *Union Oil,* when the homesteader has disposed of the property. Thus, it continued its analysis of the judgment lien statute and the homestead statutes.

The court in *Union Oil* recognized the interchangeability of the terms "real property," "land claimed," and "homestead" throughout the homestead statutes and then compared the language of the statute providing for judgment liens (paragraph 3633, Civil Code, predecessor to § 33–964):

"From the time of its docketing ... a judgment becomes a lien for a period of five years from the date of its rendition upon all the *real property* of the judgment debtor, *except such* as is or may be exempt from execution, including *homesteads:* ... Provided, that nothing herein contained shall prevent any person entitled thereto from declaring a homestead on real property as provided by law after the lien herein provided for shall have attached to *said real property* and from thereafter holding the *same as a homestead* free and clear of said lien." 23 Ariz. at 245, 202 P. at 1080 (emphasis added).

The court concluded that this statute clearly provided that no judgment lien could attach to the *property* claimed as a homestead, and therefore it was not possible to hold the excess value of the homestead subject to the judgment lien. The court concluded that the judgment creditors should have invoked the statutory appraisal procedure.

▆ Portions of the judgment lien statute have been amended, and A.R.S. § 33–964 now reads in pertinent part:

"A. Except as provided in §§ 33–729 and 33–730, from and after the time of recording as provided in § 33–961, a judgment shall become a lien for a period of five years from the date it is given, upon all real property of the judgment debtor except real property exempt from execution, including *the interest in the homestead,* in the county where the judgment is recorded, whether the property is then owned by the judgment debtor or is later acquired.

"B. Any person entitled thereto may declare a homestead on real property as provided by law after the lien has attached to the real property and may thereafter hold *the homestead interest* in the real property free and clear of the judgment lien." (Emphasis added).

The statute now refers to the "interest in the homestead" or "homestead interest." Evans maintains that this use of "homestead interest" rather than "homestead" indicates that only the statutorily fixed dollar amount of the homestead exemption is protected from execution and not the property itself. We disagree.

The language used in the statutes relating to homesteads and the homestead exemption, A.R.S. §§ 33–1101 to 1107, consistently suggests that "homestead" is a unit of property and not a severable dollar amount. For example, any person of age 18 or over may hold "as a homestead" real property. *See* A.R.S. § 33–1101. The procedure to claim a homestead exemption includes designating "the property claimed." *See* A.R.S. § 33–1102. The "homestead" is exempt from "attachment, execution and forced sale." *See* A.R.S. § 33–1103. A.R.S. § 33–1105 repeatedly refers to "the property claimed" as a homestead and "premises claimed." We note that since amending the judgment lien statute to refer to "homestead interest" rather than "homestead," the legislature has amended the homestead statutes, but has retained the interchangeability of the terms "homestead" and "property" noted in *Union Oil.* We can only conclude that this reflects a deliberate choice to maintain the special status granted to *property* claimed as a homestead.

This conclusion is bolstered by numerous cases determining whether liens attach against property claimed as a homestead. In all cases, it is the property that is protected and not the amount of the homestead exemption. *See, e.g., Seaney v. Molling,* 62 Ariz. 81, 153 P.2d 532 (1944) (assignee of all property not exempt from execution did not get title to homestead property even though declaration of homestead filed nearly five years after assignment); *Schreiber v. Hill,* 54 Ariz. 345, 95 P.2d 566 (1939) (property was exempt from execution even though declaration of homestead filed just before conveying property, apparently for express purpose of passing clear title to the property); *Wheeler Perry Co. v. Mortgage Bond Co.,* 41 Ariz. 247, 17 P.2d 331 (1932) (filing of homestead declaration freed property of prior judgment lien so that a subsequent mortgage executed by homesteaders had priority); *Security Trust & Savings Bank v. McClure,* 29 Ariz. 325, 241 P. 515 (1925) (judgment lien obtained prior to filing of homestead declaration did not revive on sale of homestead property to third party). *Cf. McLaws v. Kruger,* 130 Ariz. 317, 636 P.2d 95 (1981) (although homestead property is exempt from attachment, proceeds from voluntary sale of the property are subject to garnishment); *McFarland v. Pruitt,* 69 Ariz. 133, 210 P.2d 963 (1949) (property appraised and sold in execution loses its character as homestead; thus, price paid to redeem property by homesteaders included penalty on entire purchase price without excluding proceeds received from sale as the amount of homestead exemption); *Mack v. Boots,* 29 Ariz. 116, 239 P. 794 (1925) (automobile obtained as trade for equity in homestead was not exempt from execution).

■ We find that the homestead statutes specially protect property from general execution. The analysis of *Union Oil* is still pertinent, and that case is dispositive in this instance. We conclude that a judgment lien does not attach to the excess value of the homestead and that a judgment creditor must first invoke the statutory appraisal procedure to reach the excess.

■ Forced sale of homestead property is authorized under A.R.S. § 33–1105 only when the value of the property exceeds the value of the homestead exemption over and above all liens and encumbrances. Evans suggests that the legislature could not have intended to absolutely protect certain debtors merely because the amount of judgments against them plus the homestead exemption exceed the appraised value. This argument interprets § 33–1105 too broadly, however. Section 33–1105 must be read with § 33–1103, to determine whether judgment liens are to be considered in determining the value of the homestead exemption "over and above all liens and encumbrances." We proceed to that analysis.

The statutory language is clear that the homestead property is exempt from "attachment, execution and forced sale." *See* A.R.S. § 33–1101. Exceptions to this exemption are clearly delineated in A.R.S. § 33–1103, which provides:

"A. The homestead, from the date of recording the claim, is exempt from attachment, execution and forced sale, and from sale under a judgment or lien existing prior to recording the claim, except:

"1. A duly executed mortgage, deed of trust, or security agreement on the mobile home on which the homestead is filed.

"2. A lien for labor or material that attached before the property was claimed as a homestead.

"B. A sale as described in subsection A and not excepted by paragraphs 1 and 2 thereof made after the claim of homestead is recorded is invalid and does not convey an interest in the homestead, whether made under a judgment existing before or after recording of the claim."

In upholding the constitutionality of A.R.S. § 33–1103, this court noted that the exceptions to the exemption from attachment, execution and forced sale are substantially different from other debts. The exceptions are specially related to the property by relying upon the property as security for a specific debt (§ 33–1103(A)(1)) or by improving it through labor or materials

(§ 33–1103(A)(2)). *Maryland National Insurance Co. v. Ozzie Young Drilling Co.,* 22 Ariz.App. 195, 199, 526 P.2d 402, 406 (1974). These exceptions are also related to the purpose of the homestead law "to protect the family against forced sale of its home property for debts which are not specifically related to it." *Id. See also Matcha v. Winn,* 131 Ariz. 115, 117, 638 P.2d 1361, 1363 (App.1981) (fundamental purpose of homestead law is to protect the family against forced sale of home property from certain creditors).

A judgment lien obtained pursuant to A.R.S. § 33–964 does not extend to property on which a homestead declaration has been filed. The "liens and encumbrances" referred to in A.R.S. § 33–1105 are the same liens and encumbrances allowed as exceptions to the homestead exemption by A.R.S. § 33–1103. If the value of the homestead property exceeds the value of the homestead exemption over and above the liens and encumbrances within that narrowly defined category, the property is subject to execution pursuant to A.R.S. § 33–1105. Read in this light, the statute does not provide unlimited protection for spendthrift debtors with many outstanding judgments against them. A.R.S. § 33–1105 does not mean that the value of the homestead property must exceed the value of the homestead exemption plus all outstanding judgment lien obligations.

In conclusion, we find that a judgment lien obtained pursuant to A.R.S. § 33–964 does not extend to homestead property. Given the special protection of the homestead statutes, a judgment creditor can reach excess value in the property over the amount of the homestead exemption only by first invoking the appraisal procedure set forth in A.R.S. § 33–1105.

Because of our resolution of the Youngs' appeal, we need not reach the issue of attorney's fees raised in Evans' appeal.

The judgment of the trial court is reversed.

EUBANK and MEYERSON, JJ., concur.